FOR PUBLICATION

| DISTRICT COURT OF THE VIRGIN ISLANDS |
| DIVISION OF ST. THOMAS AND ST. JOHN |
| APPELLATE DIVISION |

CLEVE WEBSTER )
)
) D.C. Civ. App. No. 2007-24
)
    Appellant, )
)
v. )
)
SHEKEMA GEORGE )
)
    Appellee. )
)

On Appeal from the Superior Court of the Virgin Islands,
The Honorable Rhys S. Hodge, presiding

Considered: June 24, 2011
Filed: September 17, 2012

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge of the District Court of the Virgin Islands; **RAYMOND FINCH**, Judge of the District Court of the Virgin Islands; and **HAROLD W.L. WILLOCKS**, Judge of the Superior Court of the Virgin Islands, Division of St. Croix.

**APPEARANCES:**

**Cleve Webster**
    *Pro Se*

**Shekema George**
    *Pro Se*

# MEMORANDUM OPINION

**PER CURIAM,**

Appellant Cleve Webster ("Webster"), appeals the Judgment of the Superior Court of the Virgin Islands awarding Shekema George $2,540. For the reasons given below, the Court will affirm the Superior Court judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2005 Shekema George ("George") entered into negotiations with Cleve Webster[1] to purchase real property located in estate Santa Maria (the "Property") from Edmund Webster and Bernice Webster. Webster engaged in negotiations for the sale of the property on behalf of Edmund Webster and Bernice Webster. At the conclusion of the negotiations, Cleve Webster agreed to sell George the property.

Shortly after the closing of the sale of the property, George spoke with Webster about developing the property. George informed Webster that she was interested in building a home on the property. Webster advised George to obtain a topographical map of the property as well as an architectural design plan for a

---

[1] Webster engaged in negotiations for the sale of the property on behalf of the Edmund Webster and Bernice Webster.

Cleve Webster v. Shekema George
D.C. Civ. App. No. 2007-24
Memorandum Opinion
Page 3

house. Webster suggested that George consult with Nelson Petty for a topographical map and Leonard Gumbs ("Gumbs") for an architectural design.

He further informed George that an architectural design for a house would cost over $6,500. Webster suggested a more economical alternative for George would be to use plans for a house that Webster owned. Webster suggested that Gumbs could modify those plans for $5,400. George agreed and gave Webster a down payment of $3,000 to pay to Gumbs.

Shortly thereafter, Webster told George that George would have to pay Webster $2,000 for the use of Webster's plans. Webster explained that the existing plans were developed by his family and, therefore, were his family's property (the "Webster family plans"). He further clarified that the $2,000 was not in addition to the $5,400, but part of it. Webster asked George to memorialize this agreement by signing a contract. George refused.

Instead of signing the contract, George contacted Gumbs directly who stated his price for the architectural plans was $3,400 and that Webster had paid him $500. George signed a contract directly with Gumbs. In addition, she paid him $2,900 to complete the architectural plans. Gumbs developed three

Cleve Webster v. Shekema George
D.C. Civ. App. No. 2007-24
Memorandum Opinion
Page 4

designs for George.

Subsequently, George filed a small claims action for debt in Superior Court alleging that Webster owed her $2,540. In her complaint she states this amount reflects the $2,500 balance Webster retained from the $3,000 George had paid him, plus $40 of court fees.

At the trial, the Superior Court held that there was no contract between Webster and George. Therefore, the Court ordered Webster to pay George $2,540.

Presently, Webster is appealing the Superior Court's judgment in favor of George. The legal issue on appeal is whether the Superior Court erred in holding that there was no contract between Webster and George. Webster also states that the trial court erred when it found: 1) that the architectural plans Gumbs used to develop the layout of George's house did not belong to the Webster family; and 2) that Gumbs retained ownership of the Webster family plans because of the modifications Gumbs made to them. George has not filed an opposition.

## II.  JURISDICTION AND STANDARD OF REVIEW

### A. Jurisdiction

This Court has jurisdiction to review final judgments and orders of the Superior Court of the Virgin Islands. *See* V.I. ANN.

*Cleve Webster v. Shekema George*
D.C. Civ. App. No. 2007-24
Memorandum Opinion
Page 5

CODE Tit.4, § 33 (2006); Revised Organic Act of 1984, 28 U.S.C. § 1613(a)(2006); *see also Joseph v. People of the V.I.*, Criminal No. 05-13, 2008 WL 5663569 (D.C. App. Div. 2007) (explaining that this Court retained its appellate jurisdiction through the date of the certification of the Supreme Court of the Virgin Islands).

**B. Standard of Review**

> The standard of review for this Court in examining the Superior Court's application of law is plenary. Findings of fact are reviewed on appeal under a clearly erroneous standard of review. The appellate court must accept the factual determination of the fact finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility or (2) bears no rational relationship to the supportive evidentiary data.

*St. Thomas-St. John Board of Elections v. Daniel*, 2007 V.I. Supreme LEXIS 1 (V.I. Sept. 5, 2007) (citing *Wexler v. Westfield Bd. Of Educ.*, 784 F.2d 176, 181 (3d Cir. 1986)); *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91-92 (3d Cir. 1992).

Where small claims matters are concerned, an appellate court should remain mindful that the goal of the trial judge is to do "substantial justice" between the parties. *Cape Air Int'l v. Lindsey*, 2010 V.I. Supreme LEXIS 24 (V.I. June 23, 2010).

Further, questions involving contract construction - the legal operation of a contract - is a question of law mandating plenary review. *See In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d

Cleve Webster v. Shekema George
D.C. Civ. App. No. 2007-24
Memorandum Opinion
Page 6

Cir. 2000); Nibbs v. Roberts, 31 V.I. 196, 204 (D.V.I. App. Div. 1995) ("The trial court's decision concerning the application of a legal precept is subject to plenary review."). Contract interpretation, on the other hand, is a question of fact, which is reviewed under a clearly erroneous standard. See In re Cendant Corp., 233 F.3d at 193; Nibbs, 31 V.I. at 204.

### III. ANALYSIS

#### A. Superior Court's Findings of Fact

Webster argues that the Superior Court erred when it found that the architectural plans Gumbs used to develop the layout for George's house did not belong to the Webster family.

According to the trial testimony, Gumbs developed three schemes for George. Gumbs testified at trial that he did not use the specific plans Webster identified as the Webster family's plans to develop the schemes. Indeed, Gumbs testified that he had never previously seen the plans Webster identified as belonging to the Webster family. Accordingly, the Superior Court's finding was not clearly erroneous.[2]

---

[2] Webster also argues that the Superior Court's finding that Gumbs retains ownership of the Webster family plans because he modified them was clearly erroneous. The Superior Court found that,

> Mr. Gumbs who is an architect that work [sic] for fees specifically said that plans done by an architect becomes his work product and the work product he was working from was not the same in which Mr. Webster says he has some type of ownership. . . . [T]he Court finds that the modifications made by the request of Ms. George are different deviations from the original modification that was on his computer that were not the original ones from Marshall Bernier Development [the Webster family

Case: 3:07-cv-00024-CVA Document #: 17 Filed: 09/17/12 Page 11 of 14

*Cleve Webster v. Shekema George*
D.C. Civ. App. No. 2007-24
Memorandum Opinion
Page 7

### B. Existence of a Verbal Contract

Webster contends that the trial court erred in holding there was no verbal contract between him and George. In support of his argument, he states that Gumbs used the architectural design owned exclusively by his family to form an architectural design for George's house. As such, he claims, that George was obligated to pay him $2,000 for the use of the plans.

Generally, "the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." Restatement (Second) of Contracts § 17 (1981). The Restatement (Second) of Contracts § 20 (1981) further states in pertinent part that,

> (1) There is no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations and
>     (a) neither party knows or has reason to know the meaning attached by the other; or
>     (b) each party knows or each party has reason to know the meaning attached by the other.

Restatement (Second) of Contracts § 20 (1981).

In *Adams & Sons, Ltd. v. Lawrence*, 514 N.W. 2d 55 (N.C. Ct.

---

plans].

(Tr. 43:10-25; 44:1-2).

The Superior Court did not make a finding of fact that Gumbs retained ownership of the Webster family plans because he modified them.

*Cleve Webster v. Shekema George*
D.C. Civ. App. No. 2007-24
Memorandum Opinion
Page 8

App. 1993), Adams and Sons, Ltd. ("Adams") entered into a written contract with Stanley and Marilyn Lawrence (the "Lawrences") to reshingle the Lawrences' barn and milkhouse for $5,446. The contract also permitted Adams to charge extra "for any additional" work. *Id.* During the course of the repair work, Stanley Lawrence orally agreed to pay $600 for additional reshingling work. After completing the work, Adams determined that additional costs for the repair work amounted to $5,541. Accordingly, he submitted a bill of $10,987 to the Lawrences. The Lawrences refused to pay the extra costs. They paid $6,046, the original $5,446 contract price, plus $600. Adams brought suit for breach of contract.

At trial Adams contended that the Lawrences agreed to pay any reasonable charges for additional work by agreeing to the "additional work" provision of the contract. Stanley Lawrence testified that he knew the contract allowed for additional charges for additional work, but expected advance notice of any such charges. The trial court determined that the Lawrences were liable for $5,446 and the additional $600 charge. Adams appealed.

Applying section 20 of the Restatement (Second) of Contracts the appellate court determined that "the only reasonable inference from the evidence is that the parties assigned

*Cleve Webster v. Shekema George*
D.C. Civ. App. No. 2007-24
Memorandum Opinion
Page 9

materially different interpretations to the additional charge provision, and never communicated that fact to each other. As a result, the additional charge provision, as interpreted by Adams, cannot be enforced against the Lawrences." *Id.* As such, the appellate court affirmed the trial court's determination. *See, e.g., Local Motion, Inc. v. Niescher*, 105 F.3d 1278 (9th Cir. 1997) (affirming the district court's determination that there was no meeting of the minds to form a contract because the parties attached different views to the meaning of "at the same terms" in the contract.).

Webster contends that he offered George the Webster family's architectural design to use to develop George's house. He claims that he agreed that George would pay him $2,000 for the use of the design. He asserts that George paid him $3,000 towards this agreement.

George testified at trial that she agreed to pay $5,400 for an architect to modify Webster's existing plans. She contends that Webster did not initially state he was charging $2,000 for the use of his plans. George further testified that it was only after she had paid Webster $3,000, that Webster approached her and asked her to sign an agreement stating she would pay him $2,000 for his family's plans.

Case: 3:07-cv-00024-CVA Document #: 17 Filed: 09/17/12 Page 10 of 10

*Cleve Webster v. Shekema George*
D.C. Civ. App. No. 2007-24
Memorandum Opinion
Page 10

Clearly, Webster and George ran afoul of the mutual assent requirement that is a prerequisite to contract formation, as they applied materially different meanings to "their manifestations." Restatement (Second) of Contracts § 20 (1981). Accordingly, George and Webster did not mutually assent to the terms of their contract. As such, no contract existed between George and Webster.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the Superior Court's judgment.